UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 06-205-GWU

MARY BAKER, PLAINTIFF,

VS. **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of his applications for Supplemental Security Income (SSI) and Disability Insurance Benefits (DIB). The appeal is currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to

1

Baker

>   Step 4. If no, the claimant is not disabled. <u>See</u> 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. <u>See</u> 20 C.F.R. 404.920(d), 416.920(d).

5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. <u>See</u> 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. <u>See</u> 20 C.F.R. 404.1520(e), 416.920(e).

7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. <u>See</u> 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

<u>Garner v. Heckler</u>, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. <u>Jones v. Secretary of Health and Human Services</u>, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial

2

Baker

evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

3

Baker

> First, we examine whether there is objective medical evidence of an underlying medical condition.  If there is, we then examine:  (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment.  The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability.  Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984).  However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations.  Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987).  Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

4

Baker

or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

Baker

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid.  In such cases, the agency may be required to consult a vocational specialist.  Damron v. Secretary, 778 F.2d

279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Mary Baker, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of a history of diffuse joint pain, degenerative disc disease, L4-L5 and L5-S1 stenosis (status post fusion), an anxiety disorder, a depressive disorder, and supraventricular tachycardia. (Tr. 21). Nevertheless, based in part on the testimony of a vocational expert (VE), the ALJ determined that the plaintiff retained the residual functional capacity to perform her past relevant work as a cook/waitress, production inspector, inventory clerk, and van driver, and therefore was not entitled to benefits. (Tr. 25-7). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ had asked the VE whether a person of the plaintiff's age, education, and work experience could perform any jobs if she were limited to "light" level exertion, could occasionally climb ladders, and had a "limited a satisfactory" ability to relate to co-workers, interact with supervisors, deal with work stresses, and understand, remember, and carry out detailed and complex

Baker

instructions. (Tr. 605-6). The VE responded that the plaintiff could perform much of her past relevant work. (Tr. 606).

On appeal, this Court must determine whether the administrative decision is supported by substantial evidence.

The plaintiff testified at the first of two administrative hearings that her worst problem was nerves and mental instability, and that she had been diagnosed with bipolar disorder (Tr. 591) although she also had fibromyalgia and back problems from a diagnosis of degenerative disc disease (Tr. 593). Other problems included migraine headaches and neck pain. (Tr. 596-7). Subsequently, the plaintiff underwent a lumbar spine fusion procedure, and testified at the second administrative hearing that she had been in critical condition with lung and heart problems for 10 days after the surgery. (Tr. 614-15).

Although the plaintiff's treating neurosurgeon, Dr. Magdy El-Kalliny, submitted a report dated January 27, 2005 indicating that her problems were mechanical low back pain status post posterior lumbar fusion of L4-5 and L5-S1, and she had "moderate" residual back pain which limited her to a total of no more than three hours a day working (Tr. 504), the surgery had taken place on October 1, 2004 (Tr. 335-6), and there is no indication that the physician expected the limitation to last for a full twelve months. The ALJ discounted Dr. El-Kalliny's opinion because she felt it was inconsistent with "moderate" back pain and was also inconsistent with the physician's opinion that the plaintiff could lift up to 50 pounds occasionally. (Tr. 23).

8

Baker

She also felt that it was not supported by objective medical evidence. (Tr. 24). The plaintiff challenges this conclusion on appeal, but due to the durational issue as well as the inconsistencies noted in the hearing decision, the ALJ could reasonably have relied on other reports from the relevant period. These include consultative examiner Jeff Reichard, who examined the plaintiff in January, 2003 and concluded that the plaintiff appeared to be able to perform at least a mild moderate amount of ambulating, standing, bending, stooping, and lifting heavy objects. (Tr. 196-9). State agency physicians who reviewed a portion of the record in 2003 felt that the plaintiff could perform "medium" level exertion, with occasional climbing of ladders, ropes, and scaffolds. (Tr. 219-26, 244-51). While the plaintiff clearly did develop cardiopulmonary complications during her hospital stay (e.g. Tr. 359, 422-9), her lung problems had completely resolved in less than a month (Tr. 483) and no restrictions were specifically given by her treating specialist for her diagnosis of supraventricular tachycardia, which was treated with radiofrequency ablation (Tr. 529-36). The plaintiff did not prove that she had permanent physical restrictions greater than determined by the ALJ.

The Court does not agree with the ALJ's resolution of the mental issues, however, which the plaintiff had described as being her primary problem.

The plaintiff's family physician referred her to a psychiatrist, Dr. P. D. Patel, in April, 2003. (Tr. 203). Dr. Patel began treatment in June, 2003, approximately five months after a consultative psychiatric evaluation by Dr. Kevin Eggerman which

had resulted in diagnoses of a depressive disorder, alcohol abuse in early remission, and crack cocaine abuse in full sustained remission. (Tr. 194). Dr. Eggerman opined that the plaintiff would have at least a "fair" ability to make occupational adjustments. (Tr. 195). The plaintiff complained of depression to Dr. Patel and reported that she had been placed on Paxil by another psychological group, but it was not helping her. (Tr. 265). Dr. Patel noted that the plaintiff was unkempt and disheveled, had an anxious, apprehensive, and dysphoric aspect, and diagnosed a recurrent major depressive disorder, "rule out" bipolar affective disorder, and a history of alcohol dependency in remission. (Id.). He gave a current Global Assessment of Functioning (GAF) score of 30, reflecting an inability to function in almost all areas, per the <u>Diagnostic and Statistical Manual of Mental Disorders</u> (4th Edition-Text Revision), p. 32. The plaintiff was not seen again until January, 2004, when she reported being quite depressed, having a manic episode in November as well as more depressive episodes, and stating that she had to give up her job due to extreme difficulties in dealing with stress. (Tr. 263). Dr. Patel noted mild to moderate psychomotor retardation and an affect appropriate to a depressed mood. (Id.). He diagnosed a mixed bipolar affective disorder, and again assigned a GAF of 30. He prescribed the medication Lamictal for mood stabilization. (Id.). The plaintiff initially reported some improvement, but also indicated that she continued to have problems with pain (which was "driving her crazy)" stress, and reduced energy. (Tr. 259-61). Dr. Patel prepared a mental residual functional capacity

Baker

questionnaire on May 10, 2004, which indicated that the plaintiff had moderate limitations in many areas. (Tr. 253-4). She also had a "marked" limitation in her ability to complete and normal workday and workweek without interruptions from psychologically based symptoms and tolerate ordinary stresses associated with daily work activity. "Marked" was defined as "an impairment that seriously interferes with the ability to function in a consistent, reliable and appropriate manner in the workplace." (Tr. 253). He also diagnosed restless leg syndrome and chronic fatigue syndrome. (Tr. 255). Subsequent office notes show that the plaintiff was seen on at least five more occasions through March, 2005. (Tr. 523-7). Dr. Patel prepared another mental residual functional capacity questionnaire on April 10, 2005, which indicated that the plaintiff had even more impairments, with many categories now in the "marked" range of restriction. (Tr. 520-2).

The ALJ stated in her decision that she rejected the April, 2005 restrictions because they were not supported by Dr. Patel's treatment record or other psychological evidence, and there was "no rational explanation offered for the difference in opinion of 2005 as compared to the less restrictive report of May 10, 2004." (Tr. 25). It was also noted that Dr. Patel described the plaintiff as calm in his most recent office note dated May 12, 2005; however, this note may have been written by a physician's assistant. (Tr. 542). Other notes from late 2004 and 2005 suggested the plaintiff was still complaining of mood swings and even an "out of body experience." (Tr. 524, 526).

11

Baker

Whether or not the most recent report by Dr. Patel was credited, he still identified greater restrictions in his May, 2004 report than were given in the hypothetical question. The state agency reviewers who found that the plaintiff did not even had a "severe" mental impairment (Tr. 204, 216, 230) did not have the opportunity to review and comment on the records from Dr. Patel. Dr. Eggerman had found fewer restrictions at an earlier date, but he did not have the benefit of a longitudinal treatment relationship with the plaintiff. Under the circumstances of this case, a remand will be required in order to obtain testimony from a medical adviser with access to the entire record if the opinion of the treating psychiatrist is to be completely rejected.

The decision will be remanded for further consideration.

This the 7th day of March, 2007.

Signed By:

*G. Wix Unthank*

**United States Senior Judge**